# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOLENE R. STINSON-WALKER,

    Plaintiff

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

    Defendant

Case No.: 3:19-cv-00334-WGC

**Order**

Re: ECF Nos. 14, 16

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 14.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 16, 17.)

After a thorough review, Plaintiff's motion is granted, and the Commissioner's cross-motion to affirm is denied.

## I. BACKGROUND

On March 31, 2014, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning March 31, 2011. (Administrative Record (AR) 313.) The applications were denied initially. (AR 168-174)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 175-176.) ALJ Kathryn Burgchardt held a hearing on March 15, 2016. (AR 61-105.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was

also taken from a vocational expert (VE). On May 2, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 138-155.)

Plaintiff requested review, and the Appeals Council granted the request and remanded the case to the ALJ. The Appeals counsel stated that HALLEX I-2-6-74 provides that an ALJ must ask the claimant and the representative whether they have any objection(s) to the VE testifying, and rule on any objection, and the claimant and his representative have a right to question the VE fully on any pertinent matter within the VE's area of expertise. The Appeals Council found the ALJ did not rule on Plaintiff's representative's post-hearing objections to the VE testimony, and the ALJ asked the representative to stop objecting to VE testimony. In addition, when the representative asked the VE to answer questions regarding the source of the job data, the ALJ interrupted and refused to allow the VE to answer. On remand, the Appeals Council instructed the ALJ to allow the representative to question the VE on matters within the VE's area of expertise, and if warranted, the ALJ was to expand the record, obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on the claimant's occupational base. In addition, the ALJ was directed, before relying on the VE evidence, to identify and resolve any conflicts between the occupational evidence provided by the VE and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations. (AR 163-164.)

ALJ Burgchardt held a second hearing on April 10, 2018. (AR 33-60.) Plaintiff was again represented by counsel, and the VE was questioned by both the ALJ and Plaintiff's counsel. On July 31, 2018, ALJ Burgchardt issued a second decision finding Plaintiff not disabled. (AR 13-25.) Plaintiff requested review of the ALJ's second decision, and the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ erred in relying on VE testimony to fulfill her step 5 burden without addressing pre-hearing evidence and post-hearing objections that raised the issue of reliability of the VE's testimony; and (2) the ALJ erred when she failed to properly evaluate the medical opinion evidence.

The Commissioner, on the other hand, argues that the VE's testimony was substantial evidence in support of the ALJ's step five finding that Plaintiff was not disabled; and the ALJ properly evaluated the opinion evidence.

## II. STANDARDS

### A. Disability Process

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1151-52 (2019). A claimant may apply for disability insurance benefits (DIB) under Title II of the Social Security Act, and/or supplemental security income (SSI) benefits under Title XVI of the Act. SSI benefits are based on need, and to be eligible a claimant must be "aged, blind or disabled" and have income and resources under certain thresholds. 42 U.S.C. § 1382(a). DIB are based on earnings, and the claimant must be disabled and have contributed to the insurance trust fund through deductions in wages. 42 U.S.C. § 401(b). DIB, unlike SSI, are limited to a certain period of insurance determined by the amount of the claimant's previously taxed earnings. 42 U.S.C. § 423(c)(1). Title 20 of the Code of Federal Regulations contains SSA's regulations. Those that start with 404 are Title II regulations. Those that start with 416 are Title XVI regulations.

1   After a claimant files an application for disability benefits, a disability examiner at the

2   state Disability Determination agency, working with a doctor(s), makes the initial decision on the

3   claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the

4   claim initially, the claimant may request reconsideration of the denial, and the case is sent to a

5   different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2).

6   If the agency denies the claim on reconsideration, the claimant may request a hearing and the

7   case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§

8   404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing.

9   *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by

10  the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council

11  determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing.

12  If the Appeals Council denies review, the claimant can file an action in the United States District

13  Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

14  **B. Five-Step Evaluation of Disability**

15  Under the Social Security Act, "disability" is the inability to engage "in any substantial

16  gainful activity by reason of any medically determinable physical or mental impairment which

17  can be expected to result in death or which has lasted or can be expected to last for a continuous

18  period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or

19  her physical or mental impairment(s) are so severe as to preclude the claimant from doing not

20  only his or her previous work but also, any other work which exists in the national economy,

21  considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

22  The Commissioner has established a five-step sequential process for determining whether

23  a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

4

137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough

for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC,

age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[1]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

---

[1] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through March 31, 2012, and had not engaged in substantial gainful activity since the alleged onset date. (AR 19.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: history of right foot injury requiring surgery; migraines; degenerative disc disease of the lumbar spine; asthma; depressive disorder; and post-traumatic stress disorder (PTSD). (AR 19.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments.

(AR 19.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except: Plaintiff would require unskilled work with SVP of one to two, performing only routine tasks with simple decision making; she could not work in close proximity to supervisors or coworkers (meaning that she could not function as a member of a team), and could not have frequent or prolonged direct contact with the public; she could lift and/or carry 10 pounds frequently and 20 pounds occasionally; she could stand and/or walk with normal breaks for two hours in an eight-hour workday; she could sit, with normal breaks, for six hours in an eight-hour workday; she could perform pushing and pulling motions with her upper and lower extremities within these weight restrictions, but was limited to occasionally pushing and pulling with the right lower extremity; she should be restricted to a relatively clean work environment, meaning low levels of pollutants; she could frequently balance, stoop, kneel and crawl; she could occasionally climb ladders, ropes and scaffolds; and, she could occasionally crouch and climb ramps and stairs. (AR 21.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 23.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: final assembler (DOT 713.687-018), products assembler (DOT 706.687-010), and an electronics worker (DOT 726.687-010). The ALJ stated that the VE's testimony was consistent with the information in the DOT, supplemented by the VE's experience. (AR 24.)

The ALJ acknowledged that after the previous hearing, and the most recent hearing, Plaintiff's representative objected to the VE testimony, and particularly to the jobs cited by the

VE and the number of jobs available in the national economy. The ALJ stated that Plaintiff's representative's objections were overruled, concluding that the regulations require the ALJ to take administrative notice of several sources of reliable job information, including the DOT, and specifically permit the use of a VE or other specialist to assist in determining whether an individual is disabled. In addition, the ALJ said that 20 C.F.R. § 416.968 provides definitions for skill requirements of unskilled, semi-skilled and skilled work that do not correspond directly with reasoning levels as listed in the DOT, but are related to levels of specific vocational preparation, as explained in Social Security Ruling (SSR) 00-4p. To the extent Plaintiff's representative was arguing that job definitions are outdated in the DOT or that job numbers obtained from the sources listed in 20 C.F.R. 416.966(d) are vague or unreliable, the ALJ found that those arguments were foreclosed by regulation. (AR 24-25.)

As a result, the ALJ found Plaintiff not disabled from the alleged onset date through the date of the decision. (AR 25.)

**B. VE Testimony**

Plaintiff argues that the ALJ erred in relying on VE testimony to fulfill her step 5 burden without addressing pre-hearing evidence and post-hearing objections that raised the issue of reliability of the VE's testimony. This argument has two components: (1) that the ALJ did not adequately address two vocational rehabilitation counselor opinions submitted by Plaintiff (before and after the hearing) that contradicted the VE's testimony at the hearing that relied on the DOT; and (2) the VE testified, and the ALJ adopted the testimony, that Plaintiff could perform certain jobs that exist in the national economy that are classified by the DOT as unskilled, but the ALJ failed to appropriately address conflicting evidence presented by Plaintiff that those jobs are not currently performed at the unskilled level.

The Commissioner argues that the ALJ may rely on VE testimony to find a claimant can perform certain jobs and is not disabled. The Commissioner acknowledges that Plaintiff challenged the VE's testimony with the report from a vocational rehabilitation counselor[2], but asserts that in overruling Plaintiff's objections to the VE's testimony in her decision, the ALJ implicitly relied on the VE instead of Plaintiff's vocational rehabilitation counselor, and was permitted to do so.

**1. Plaintiff's Vocational Rehabilitation Counselor Reports**

**a. The Moran Report**

Before the April 2018 hearing, Plaintiff submitted a brief to the ALJ that included as an exhibit the vocational report from Kerri Moran, Vocational Rehabilitation Counselor. (AR 480-487.)

Ms. Moran opined that based on her experience, "a limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." (AR 486.) She said this is true even for entry-level positions, because "extensive training is required on the job wherein a new employee is paired with a supervisors and/or colleague." (*Id*.)

In addition, Ms. Moran opined that the limitation to work in a clean work environment with low pollutants "would require an accommodation" because "[o]ffice and school environments are often riddled with dust and allergens" and poor indoor air quality is prevalent. (*Id*.)

---

[2] The Commissioner discusses the report from one of Plaintiff's vocational rehabilitation counselors (Ms. Moran), but does not address the report presented post-hearing from the other (Ms. Santagati).

### b. The Santagati Report

In addition, Plaintiff submitted a post-hearing memorandum and objections to the VE's testimony, which included the report of Paula Santagati, Senior Vocational Rehabilitation Counselor. (Objections at AR 495-506, Santagati Report at AR 535-536.) Like Ms. Moran, Ms. Santagati also opined that a limitation of occasional interaction with coworkers and supervisors precludes all work because the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors. She also said this was true even in positions that are entry-level, which require training by pairing a new employee with a supervisor and/or colleague.

She cited specific data from several employers to support her opinion. For instance, Shaw's Supermarket reported that most candidates would be ready to work on their own within 3 days, but Ms. Santagati said that a person limited to occasional interaction could not complete these three days of training alongside a supervisor/colleague, and therefore, could not sustain the job. Next, she cited the example of a dishwasher for Healthcare Services, who provides up to six weeks of on the job training where the new hire is paired with the kitchen manager and then colleagues. A person with these restrictions would not be able to complete the training. In addition, factory work at Gillette requires training that can be completed by the end of one shift, but due to the physical proximity of other works and interdependence on one part of the job for the other to happen, interaction with coworkers is constant. Finally, she cited Merry Maids as another example. Merry Maids pairs new hires with another team for training even when a new hire has experience. In that case, interpersonal contact would exceed an occasional limitation in this regard. (AR 535.)

### c. Analysis

The ALJ did not discuss or acknowledge the reports of Ms. Moran or Ms. Santagati. The Commissioner argues that the ALJ implicitly overruled the objections raised by Ms. Moran and Ms. Santagati when she adopted the VE's testimony. The VE did not provide any testimony regarding the objections raised by Ms. Moran and Ms. Santagati. Nor did the ALJ provide any explanation for adopting the VE's testimony over that of Ms. Moran and Ms. Santagati. As a result, the court finds that the ALJ erred. 42 U.S.C. § 423(d)(5)(B) ("In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider *all* evidence available in such individual's case record[.]") (emphasis added).

Remand is appropriate for the ALJ to specifically consider and address the reports of Ms. Moran and Ms. Santagati, and reconcile the conflict between their reports and the VE's testimony. If the ALJ opts to adopt the VE's testimony over that of Ms. Moran and Ms. Santagati, the ALJ must provide a reasonable explanation.

### 2. Unskilled (DOT) vs Skilled Work (O*NET)

Plaintiff also presented evidence demonstrating that the step 5 jobs identified by the VE, and adopted by the ALJ, no longer exist as unskilled work in the national economy.

The jobs identified by the VE as existing in significant numbers in the national economy that Plaintiff could do are: final assembler, production assembler, and electronics worker. Plaintiff objected to these jobs on the basis that according to current labor market data none of them are performed at the unskilled level, and therefore, would exceed the limitation to simple work in the RFC. Plaintiff argues that while the positions were described in the DOT as unskilled, the DOT was last meaningfully updated over 40 years ago, and the jobs are not

currently performed as unskilled work, based on up-to-date information provided by the United States Department of Labor (USDOL). Plaintiff asserted that vocational information found in the Occupational Information Network (O*NET) and the Occupational Employment Statistics did not support the VE's testimony that the jobs are currently performed as unskilled work. (AR 500.)

In overruling Plaintiff's objections, the ALJ said that the regulations require the ALJ to take administrative notice of several sources of reliable job information, including the DOT, and permit the use of a VE to assist in determining whether an individual is disabled, citing 20 C.F.R. § 416.966(d). In addition, the ALJ said that 20 C.F.R. § 416.968 provides definitions for skill requirements of unskilled, semi-skilled, and skilled work, that do not correspond directly with the reasoning levels listed in the DOT, but instead are related to levels of specific vocational preparation (SVP), as explained in Social Security ruling 00-4p. The ALJ said that to the extent Plaintiff argued that the job definitions were outdated in the DOT, the argument was foreclosed by regulation. (AR 25.)

While the ALJ said that the "regulations" foreclosed this argument, Plaintiff contends that the ALJ did not cite the regulation that supposedly forecloses this argument. Plaintiff does not dispute that the DOT is an administratively-recognized source of information, but contends the ALJ still had an obligation to ensure the VE testimony relied on was up to date and reliable. In addition, Plaintiff argues that the DOT is not the only source of job information an ALJ may rely on, as the ALJ "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 505. 1566(d), 20 C.F.R. § 404.1560; SSR 00-4p. Plaintiff maintains that USDOL statistics and O*NET are governmental publications of which the ALJ could take administrative notice.

14

The Commissioner argues that the ALJ correctly overruled Plaintiff's objection because the ALJ was permitted to rely on the VE's testimony that Plaintiff could perform these jobs under the DOT; the regulations require the ALJ to take administrative notice of the DOT; and, the ALJ is only required to resolve conflicts between the VE's testimony and the DOT.

At step five, the Commissioner has the burden "to identify specific jobs existing in significant numbers in the national economy that [the] claimant can perform despite her identified limitations." *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995). "In making this determination, the ALJ relies on the DOT, which is the primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (citation omitted). The Agency also takes administrative notice of reliable job information from various governmental and other publications. By way of example, the regulations discuss: County Business Patterns, published by the Bureau of the Census; Census Reports, published by the Bureau of the Census; Occupational Analyses, prepared for the Social Security Administration by various State employment agencies; and the Occupational Outlook Handbook (OOH), published by the Bureau of Labor Statistics." 20 C.F.R. § 404.1566(d). "An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ relied on the DOT in determining Plaintiff could perform other jobs in the national economy. Plaintiff objected on the basis that and the information in the DOT is out of date, and these jobs are not currently performed at the unskilled level according to the O*NET and Occupational Employment Statistics.

In *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), the Ninth Circuit noted that there is no authority "suggesting that an ALJ must *sua sponte* take administrative notice of economic

data" from non-DOT sources. The court also pointed out that while "an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT," there is "no authority suggesting that the same is true for" non-DOT sources. *Id.* at 1109. In a footnote the court discussed that 20 C.F.R. § 404.1566(d) lists data sources of which the SSA will take administrative notice. *Id.* at 1109 n. 6. The court said: "It does not follow that an ALJ must in every case reconcile conflicts *sua sponte* between each of those data sources and the VE's testimony. That requirement was established in SSR 00-4p, a Social Security Ruling, only for the DOT and an associated document." *Id.* The court went on to explain, that the DOT "is comprised of self-contained descriptions of the requirements for performance of various jobs," but "using the job distribution information in the CBP and OOH requires information and inferences not contained in the documents themselves and so not amenable to an ALJ's *sua sponte* consideration." *Id.*

In *Shaibi*, the court said that the claimant could raise the issue in a general sense before the ALJ, and that the ALJ, on request, should permit the claimant to submit supplemental briefing or interrogatories contrasting the VE's testimony with the claimant's evidence. *Id.* at 1110. If the ALJ did not address the supplemental briefing or interrogatories, the court said that the claimant could raise new evidence casting doubt on the VE's job estimates before the Appeals Council. *Id.*

Here, Plaintiff does not argue that the ALJ was required to address the O*NET information *sua sponte*; instead, Plaintiff specifically alerted the ALJ to the O*NET information in a post-hearing memorandum. The ALJ acknowledged that the regulations require her to take administrative notice of *several sources of reliable job information*, including the DOT, and permit the use of a VE to assist in the disability determination. She said that to the extent

Plaintiff argued that the job definitions in the DOT were outdated or unreliable, the argument was foreclosed by regulation. Essentially, the ALJ said that since she relied on the VE's testimony that was based on the DOT, she was precluded from considering other job information.

First, section 404.1566(d) on its face provides that the SSA "will take administrative notice of reliable job information available from various governmental and other publications" and then gives some examples of such sources. The ALJ did not assert that the O*NET does not contain reliable job information.

Second, SSR 00-4p is not determinative of the issue here. That ruling requires an ALJ to address an apparent conflict between VE testimony and the DOT. It does not state that these are the only conflicts that must ever be resolved.

Third, *Shaibi* said that the ALJ did not have an obligation to *sua sponte* address a conflict with non-DOT sources, but recognized that a claimant could raise such a conflict for the ALJ to address. Plaintiff did so here. Instead of addressing the conflict and eliciting an explanation from the VE that would justify relying on the VE instead of the O*NET data, the ALJ vaguely stated that Plaintiff's argument was precluded by regulation.

In *Ford v. Saul,* the Ninth Circuit acknowledged that a VE's testimony might not qualify as substantial evidence if it conflicts with other evidence in the record. *Id*. at 1159. The court noted that it had "long held that '*in the absence of any contrary evidence*, a [vocational expert's] testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability.'" *Ford v. Saul,* 950 F.3d 1141, 1160 (9th Cir. 2020) (emphasis added) (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017)).

Here, there was *contrary* evidence in the record, that the ALJ should have addressed with the VE before relying on the VE's testimony. If the ALJ could ignore the evidence presented by the claimant just because it was not from the DOT, then there would be no point to raising the objection and raising an objection was expressly contemplated in *Shaibi*.

For these reasons, the court finds it is appropriate to remand this matter so that the ALJ can further evaluate the VE's testimony in light of Plaintiff's post-hearing memorandum regarding the current skill level of the jobs identified by the VE, and if the ALJ intends to rely on the VE's testimony, the ALJ should further consult the VE to reconcile his testimony with the information cited by Plaintiff in the O*NET.

**C. Mental Health Opinion Evidence**

Plaintiff argues that the ALJ erred when she failed to properly evaluate the mental health opinion evidence: the opinions of Plaintiff's treating sources, Manda Sloan, PA-C, and Victor Lopez, M.D. The Commissioner argues that the ALJ gave specific and legally supported reasons for giving little weight to these opinions.

**1. Standard**

"Courts 'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physician); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not

applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).[3] Even when the treating sources are not given controlling weight, they are still entitled to deference. *Id*.

The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id*. (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of*

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

*Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining

doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific

and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012

(citation and quotation marks omitted). "Where an ALJ does not explicitly reject a medical opinion

or set forth specific legitimate reasons for crediting one medical opinion over another, he errs."

*Garrison*, 759 F.3d at 1012 (emphasis added).

For claims filed before March 27, 2017, a physician's assistant, such as Ms. Sloan, was

considered an "other source" who may provide evidence to be considered in evaluating a disability

claim. 20 C.F.R. § 404.1513(d)(1). An ALJ must provide "reasons germane to each witness" to

discount "other source" evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (citing

*Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

**2. Analysis**

**a. Ms. Sloan's Opinions**

On March 2, 2016, Ms. Sloan filled out a mental health questionnaire regarding Plaintiff's

diagnoses of PTSD and related issues of agoraphobia, paranoia, and attention and learning

problems. (AR 1071-1074.) She indicated Plaintiff had disturbance of mood accompanied by full

or partial depressive syndrome and the following symptoms: anhedonia or pervasive loss of

interest in almost all activities; appetite disturbance with weight change; sleep disturbance

(nightmares and insomnia), psychomotor agitation, decreased energy, feelings of guilt or

worthlessness, difficulty concentrating or thinking, and paranoid thinking (extreme fear of harm

to her children). (AR 1071.) She noted Plaintiff was easily distracted, and had involvement in

activities with a high probability of painful consequences which are not recognized. (AR 1071.)

She also had constant fear something bad would happen; vigilance and scanning; motor tension;

1 persistent irrational fear of specific objections, activities or situations that result in a compelling

2 desire to avoid the dreaded object, activity or situation; recurrent severe panic attacks at least once

3 a week; and recurrent and intrusive recollection of traumatic experience which is a source of

4 marked distress. (AR 1071-72.) Other symptoms included: poor memory, personality change,

5 emotional lability, paranoia or inappropriate suspiciousness, very high hostility and irritability,

6 somatization unexplained by organic disturbance, social withdrawal or isolation, and inappropriate

7 affect. (AR 1072.)

8    Ms. Sloan further commented that Plaintiff was a manager at Denny's in the past, and now

9 has such mood instability and fear of being in public, as well as angry and inappropriate outbursts,

10 and memory impairment that Ms. Sloan did not anticipate she could ever return to this type of

11 work. (AR 1072.) She described the clinical findings that demonstrate the severity of the mental

12 impairment and symptoms as: mood dysregulation, impulsiveness, tearful, irrational fears,

13 hypervigilance, nightmares, poor sleep, negative beliefs about herself and others. (AR 1072.) She

14 said that Plaintiff's symptoms and limitations began with trauma in her childhood and became

15 much worse since 2004. (AR 1072.)

16    Ms. Sloan opined that Plaintiff had marked restriction of activities of daily living; marked

17 to extreme difficulty maintaining social functioning; extreme deficiencies in concentration,

18 persistence or pace resulting in failure to complete tasks in a timely manner; extreme episodes of

19 deterioration or decompensation which cause her to withdraw from the situation or experience

20 with exacerbation of symptoms. (AR 1073.)

21    In addition, Ms. Sloan indicated that Plaintiff's psychiatric condition exacerbated her pain

22 and physical symptoms, including back pain, headaches, foot pain and neuropathy. (AR 1073.)

23 Ms. Sloan stated she did not believe Plaintiff could work at that time. (AR 1073.)

In her second decision, the ALJ incorporated her findings regarding Plaintiff's medical treatment from the first decision.

With respect to the mental health questionnaire filled out by Ms. Sloan, the ALJ stated that the medical opinions from Ms. Sloan appeared to be the product of a pre-printed questionnaire submitted to her by Plaintiff's attorney that included leading questions not designed for objective responses but for the verification of legal conclusions about the claimant's impairments. The ALJ also found that the opinions related to functional limitations were not supported with objective medical findings and were inconsistent with substantial evidence of record. The ALJ noted that Plaintiff did at times present with a constricted affect and depressed mood, but she was always cooperative, failed to exhibit objective signs of cognitive dysfunction, and was never noted to be responding to or distracted by internal stimuli. In addition, the ALJ said that Plaintiff's previously detailed high level of function was contrary to the significant limitations found by Ms. Sloan. Finally, the ALJ found that Ms. Sloan's opinions lacked professional honesty and suggested that she was acting as an advocate for Plaintiff and not an objective treating source. Therefore, the ALJ gave little weight to Ms. Sloan's opinions. (AR 151-152.)

First, "[w]hile an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, ...'the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions[.]" *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017), and quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). The ALJ did not reject the opinions of the pre-printed questionnaire on the basis that they were unexplained, but instead rejected them merely because they were expressed in such a form. This is impermissible. The ALJ stated that the questions were leading and sought legal conclusions, but a review of the form does not reveal this

to be the case. The court cannot discern any significant difference between this form and the forms the Agency itself uses in disability evaluations. Therefore, this was not a valid basis for rejecting the opinion.

Second, the ALJ stated that the opinions lacked professional honesty and suggested that she was acting as an advocate for Plaintiff and not an objective treating source. The ALJ did not explain what about the opinions indicated they lacked professional honesty or suggested she was acting as an advocate and not objectively. A review of the responses on the form itself does not review this; therefore, without further explanation the court finds this was not a germane reason for rejecting Ms. Sloan's opinions.

Finally, the ALJ's found that the functional limitations identified by Ms. Sloan were not supported with objective medical findings and were inconsistent with substantial evidence of record.

On March 3, 2014, Plaintiff saw Ms. Sloan to address her PTSD. She had a prior relationship that involved verbal and physical abuse, and her ex-boyfriend's parents reached out to her which was triggering. As a result she experienced nightmares and flashbacks. She reported that she would see people who reminded her of her ex, and she would "lose it." She had severe paranoia about someone taking her kids. (AR 611.) She was referred for PTSD treatment. (AR 613.)

Plaintiff had a mental health evaluation on March 13, 2014. She reported PTSD, anxiety and depression. She recounted that she had been in a car accident in 2004 and suffered headaches and chronic pain as a result. She was scared because of past abusive relationships, and feared someone would steal her kids. She also reported being raped and molested as a child. (AR 600.) She indicated that she was able to articulate her needs, was motivated to change and learn, had good verbal skills, was independent in skills of activities of daily living, she had insight into her

problems, a stable housing situation and supportive friends and family. (AR 604.) On examination, she had good hygiene, was cooperative, and had no abnormal movements or gait. She had an appropriate affect that was anxious and irritable. She was logical, goal directed, and reality based. She had no perceptual disturbances. She was alert and oriented with normal attention and concentration. She had an average fund of knowledge. She had no difficulties with articulation. She had intact judgment and insight. (AR 605.) She met the criteria for PTSD due to significant trauma and abuse, as well as her car accident, traumatic brain injury (TBI), domestic violence, rape and molestation as a child. (AR 607.) She was referred for mental health outpatient treatment. (AR 609.)

On March 10, 2014, it was noted that she would be getting counseling in the future for her PTSD. (AR 619.) She was calm, not depressed or anxious, and had a normal affect and thought content at that time. (AR 620.) Ms. Sloan noted that therapy did not work out, but Plaintiff was willing to see another therapist. (AR 622.) On July 3, 2014, it was indicated that she only attended the evaluation and one therapy appointment. The therapist had referred her for "EMDR"[4] for her PTSD, but she did not agree with the plan created by her therapist. (AR 1064.)

On August 28, 2014, Ms. Sloan indicated Plaintiff reported worsening depression and anxiety with her ex getting out of prison. It was recommended that she seek mental health treatment. (AR 1151.)

On October 6, 2014, Ms. Sloan described Plaintiff as having a long history of PTSD, depression and anxiety. Plaintiff said she avoided leaving her house, and at times when she was out in public she had to go home due to anxiety and panic. She feared harm coming to her children. She suffered from domestic violence. She said that school never came easy to her, organization

---

[4] Eye Movement Desensitization and Reprocessing Therapy.

was a problem, she struggled with following instructions, and was easily distracted and had difficulty sustaining attention. (AR 1059.) Her attention deficit hyperactivity disorder (ADHD) screening was positive, and it was recommended she establish care with Katrina Lennox, LCSW. (AR 1062.)

On March 27, 2015, Ms. Sloan saw Plaintiff for a medication review. Plaintiff recounted that she had been living with her boyfriend and he became more threatening and violent, and at one point she had to call the police and he was taken to jail. This caused her PTSD to flare up. She was stressed and fearful for her life and for her children. She did not want to go outside or in public. She had stopped her medications because she did not think they were helping. (AR 1053.) She was tearful at times. Her mood was fearful, anxious, and concerned, with a somber affect. She was again advised to establish care with Katrina Lennox, LCSW, for PTSD, and was encouraged to seek therapy. (AR 1056-57.)

On August 18, 2015, she reported that she had uncontrolled PTSD and anxiety. (AR 1020.) She was alert and cooperative, with a normal mood and affect, as well as a normal attention span and concentration. She was anxious and agitated. (AR 1024.)

In emergency room records from November 13, 2015, she complained that she fractured both feet when she was running for her life from that "weirdo." (AR 1600.)

Plaintiff saw Ms. Sloan on March 2, 2016, to discuss her long term disability application. They talked about her medical conditions, including PTSD, anxiety and depression. She explained that she had left her boyfriend when he became more verbally abusive. She had trust issues, and a fear of leaving home. She relied on her children to help with appointments and shopping. She had difficulty speaking at times and her speech would become slurred and she had a hard time finding words. She did not like being in crowds or around a lot of people. She had difficulty thinking

clearly. (AR 1115.) She had psychomotor agitation, a labile mood, and was anxious and frustrated. She had a tearful affect, and showed worry and irritability. She had racing thoughts and was easily distracted. Her insight was intact. (AR 1118.) Ms. Sloan recommended ongoing treatment for her PTSD, but Plaintiff indicated she did not want to do that at that point because she had not had a good experience with the therapist she had seen. (AR 1119.)

In her decision, the ALJ indicated that frequently attended her children's school events and independently cared for her home and five children. In addition, Plaintiff had started college classes in 2015, which suggested her social and cognitive abilities were not as limiting as she described. In addition, it was reported that Plaintiff was able to remain socially active and manage her own medication and finances, maintain an active daily lifestyle and exercise program. Finally, the ALJ said that the record does not show Plaintiff maintained on-going counseling therapy. (AR 151.)

Plaintiff's mental health treatment records are minimal. Plaintiff has a definitive diagnoses of PTSD and related anxiety related to past incidents of domestic violence and a car accident, however, the minimal treatment records do not provide support for the marked functional limitations opined by Ms. Sloan, particularly when viewed in connection with the other evidence concerning her functional abilities. Therefore, the ALJ provided a valid, germane reason for discrediting Ms. Sloan's opinions, and remand is not appropriate on this basis.

### b. Physician Report by Ms. Sloan & Dr. Lopez

Also on March 2, 2016, Dr. Lopez and Ms. Sloan completed a physician report for the Colorado Department of Health Services evaluation. They stated that Plaintiff's disability onset was December 14, 2004, noting that she suffered multiple injuries, but her PTSD started earlier. (AR 1076.) They opined Plaintiff was limited to sedentary work, but had no capacity to work at

1  that time. (AR 1077.) They said Plaintiff had a poor prognosis for significant improvement. (AR

2  1077.) In addition, intense trauma therapy was recommended, but they said that resources for this

3  were extremely limited in their area and would require travel to Durango, which Plaintiff could

4  not afford. (AR 1077.)

5       The ALJ addressed the physician's report by Ms. Sloan and Dr. Lopez, but attributed it

6  only to Dr. Lopez. (AR 150.) While Dr. Lopez said that Plaintiff's disability began in 2004, the

7  ALJ said that a review of the record showed that Plaintiff worked from 2008 through 2011, which

8  the ALJ found reduced the persuasiveness of Dr. Lopez's assessment. The ALJ acknowledged that

9  Dr. Lopez recommended intense trauma therapy, noting that resources were limited

10  geographically. The ALJ pointed out, however, that Plaintiff reported she enjoyed driving long

11  distances as a type of self-therapy, which the ALJ found reduced the consistency of Dr. Lopez's

12  brief conclusions. As such, the ALJ gave little weight to Dr. Lopez's opinions. (AR 150.)

13       The only argument Plaintiff makes regarding this report is that the ALJ mischaracterized

14  Plaintiff's testimony, stating that Plaintiff actually testified that she loved to drive and it was

15  therapeutic, but there was no indication she loved to drive long distances. (ECF Mo. 14 at 24:5-8,

16  citing AR 75.)

17       Plaintiff testified that she loved to drive and that it was therapeutic. (AR 75.) She then

18  testified that they were trying to find a mental health specialist for her, but she could not afford the

19  travel expenses to go far away to see someone. (AR 80.) She said that to get to the hearing it was

20  a three and a half or four hour drive, but she had to take a lot of breaks and it took her eleven hours

21  to get there. She then testified that she loved to drive, and it was not abnormal for her to get in her

22  vehicle and end up 1,300 or 1,400 miles away from everything, which she had done three or four

23  times in the last year. (AR 86.)

"'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison,* 759 F.3d at 1009(quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). Here, there was evidence indicating both that Plaintiff could not afford to travel for care, and that she loved to drive and did in fact take very long drives. Since the evidence can support either position, the court will not substitute its judgment for that of the ALJ, and finds the ALJ set forth a legally sufficient reason for rejecting the statement that Plaintiff could not get the treatment she needed.

## IV. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion to remand (ECF No. 14) is **GRANTED**, and the Commissioner's cross-motion to affirm (ECF No. 16) is **DENIED.** This matter is remanded, consistent with this Order, so that:

(1) the ALJ can further evaluate the VE's testimony in light of Plaintiff's post-hearing memorandum regarding the current skill level of the jobs identified by the VE, and if the ALJ intends to rely on the VE's testimony, the ALJ should further consult the VE to reconcile his testimony with the information cited by Plaintiff in the O*NET; and

(2) the ALJ can further evaluate the VE's testimony in light of Plaintiff's post-hearing memorandum regarding the current skill level of the jobs identified by the VE, and if the ALJ intends to rely on the VE's testimony, the ALJ should further consult the VE to reconcile his testimony with the information cited by Plaintiff in the O*NET.

The Clerk shall enter judgment accordingly.

Dated: August 17, 2020

William G. Cobb
United States Magistrate Judge